Mary G. BOYD, Donald R. Smith,
Dennison Manufacturing
Company, Plaintiffs,

v.

Donald J. QUIGG, Commissioner of
Patents and Trademarks,
Defendant.

Civ. A. No. 87–1647.

United States District Court,
District of Columbia.

May 25, 1988.

George E. Kersey, Chevy Chase, Md., for plaintiffs.

Charles A. Wendel, Nancy C. Slutter, Washington, D.C., for defendant.

MEMORANDUM

GESELL, District Judge.

Invoking the Court's jurisdiction under 35 U.S.C. § 145, plaintiffs, the named inventors and their assignee Dennison Manufacturing Co. ("Dennison"), seek an order directing the Commissioner of the Patents and Trademarks Office ("PTO") to issue a patent containing claims 1 to 17 of their patent application, which was first rejected by the examiner and then rejected as obvious in the light of prior art after appeal to the Board of Patent Appeals and Interferences ("Board") of the PTO.

At trial, plaintiffs presented some testimony and exhibits to supplement the evidentiary record created before the PTO. Defendant relied on the record and cross-examination of plaintiffs' two witnesses. Following the bench trial and full briefing, the Court has concluded, based on the findings of fact and conclusions of law stated below, that the complaint must be dismissed.[1]

■ Plaintiffs' patent application, Serial No. 517,320, titled Printed Heat Release Transfer Labels–2, was filed on July 26, 1983. During the subsequent proceedings before the PTO and later in this Court, plaintiffs never urged patentability of any specific dependent claims but rather insisted on the full patentability of the independent claims as well. Claim 1, the broadest claim, reads:

A heat transfer release composition comprising a mixture of a rosin ester and at

1. Plaintiffs' motion seeking permission to file belatedly proposed findings of fact, filed on May 4, 1988 after this Memorandum was in draft, is denied.

least two different soluble waxes dissolved in a volatile organic solvent.

Pl.Ex. G, p. 0018.

This undifferentiated claim applies to the specified invention which the application states

relates to the labeling of objects by the use of heat to transfer designs from a carrier to the objects, and, more particularly, to compositions which facilitate such transfers.

Pl.Ex. G, pp. 0003 to 0017. The specifications further indicate, again without critical detail, that the invention

makes use of a heat transfer release composition formed from a mixture of a rosin ester with at least two different waxes, or modified waxes, having specified viscosities and acidities dissolved in a volatile organic solvent.

Pl.Ex. G, p. 0008, 2–6.

The specifications refer to the Kingston patent, U.S. Patent No. 3,616,015, as a typical prior art heat transfer label patent. Kingston is owned by Dennison. In rejecting the application, the Board noted that the "disclosure of Kingston alone apparently would have sufficed to evidence a prima facia case of obviousness against applicants' claims." It sustained the examiner who correctly read Kingston as patenting a heat release composition of two or more waxes and rosin that may be applied to a backing as a solvent solution.

Plaintiffs contest this dispositive conclusion as well as reinforcing conclusions which the Board drew from the Dunning patent, U.S. Patent No. 3,666,516, and the Boyd patent, U.S. Patent No. 1,515,722, two other prior patents in the art.

It cannot be disputed, however, that Kingston states that "[t]he transfer layers of the present invention can be applied to the backing by any convenient method such as by emulsions, hot melts *or as a solvent solution.*" Pl.Ex. F, col. 2, lines 59–61 (emphasis added).

Although the patent application in issue does not so state and no experimental data was presented to support their position, plaintiffs' witnesses argue that, in fact, Kingston's wax release transfer layer can be applied only as a hot melt and not as a solvent solution because this is the way they used Kingston at Dennison. They then proceed to point out that their claimed invention contemplated use of waxes soluble at room temperature, a point not mentioned in the application, and that, in contrast, the waxes illustrated in Kingston are soluble only at temperatures elevated well over room temperature. On this basis, they insist that one of ordinary skill in the art would have ignored the teaching of Kingston insofar as it instructs application of the wax composition in solution. This is hardly convincing since the solubility of various waxes at various temperatures is known. The fact remains that Kingston taught that a solvent solution as well as hot melt could be used to apply the wax transfer layer by combining two waxes and a rosin in the solution.

Plaintiffs also contend that the waxes mentioned in Kingston and in a related reference, Dunning, have a dispersive effect when used that prevents achieving the same quality of result obtained by labeling with the soluble composition indicated in their patent application. Apparently as Kingston was practiced at Dennison using a hot melt process, a halo effect outside the printed label on the container object was created by the spreading of the wax. This was deemed a defect by some retailers of the objects. Dennison's personnel apparently developed a composition for application in solution that prevented the halo effect. The patent application before the Court provides no specified limitations indicating the knowledge gained at Dennison through experience in applying the Kingston process. Acidities, parts of wax to parts of solvent, temperatures, viscosity, degree of solubility, and the like are left vague or entirely undisclosed.

Thus, without adequate disclosure, plaintiffs apparently would extend the patent protection afforded in Kingston. Having failed in convincing the PTO, they hope to persuade the Court that a person of ordinary skill in the art would not have believed or accepted for practice the clear disclosures of Kingston concerning uses of

a wax/rosin composition in solvent solution. This effort must fail. Kingston was not called to testify nor was her experimental data produced. No experiments by the inventors named in the application relating to any attempted applications of Kingston's teachings were produced, only opinion statements of two in-house witnesses that a person of ordinary skill in the art would reject Kingston's solvent solution disclosures out-of-hand, treating the disclosures as unworkable surplusage.

The Court rejects this testimony. After the Kingston patent was issued, it represented what was known to the person of ordinary skill in the art. It would not require inventive power to arrive at the result noted in the specifications of the patent application in question here. A person of ordinary skill in the art of heat transfer decorating and generally familiar with the substances and processes involved could be expected to arrive at the "invention" now claimed by routinely developing a wax/rosin composition in solvent solution.

Kingston did not mislead. Surely the hypothetical person of ordinary skill in the art can be expected to know the characteristics of various waxes and the means for reducing them in combination with resins to solution. Kingston, as practiced by specialists at Dennison, cannot be limited to a hot melt process when the disclosures of the patent are explicitly to the contrary.

It is impossible to avoid the obvious fact that Kingston describes an invention employing a wax release coating adapted for labeling plastics and states that a clear image can be provided on the receiving surface by using a wax release coating to transfer the printed design by solvent solution. This is a broad claim. The application here provides no basis for concluding that its reference to "solution" means anything different than the term "solution" found in Kingston's prior claim.

Plaintiffs presented to the Court no evidence which was not before the PTO. The case is simply an effort to persuade the Court that the examiner and the Board misread and misinterpreted the prior art represented by Kingston, Dunning and Boyd. But the grounds asserted in the rejection by the examiner and the Board are not even suggested to be insufficient; it is only urged that the PTO, in effect, lacked a rational basis for its interpretation of the prior art. Given the superior knowledge and technical expertise of the PTO and in the absence of new evidence carrying "thorough conviction," plaintiffs have not met their heavy burden of making a factual showing that the PTO's findings are erroneous. *Zenith Radio Corp. v. Ladd*, 310 F.2d 859, 862 (D.C.Cir.1962).

Broad statements by self-interested inventors unsupported by experiments or other data—concluding that the prior art would be read contrary to the express language of the actual claims by one of ordinary skill in the art, carry little persuasive force, if any. This is especially the case where the application for the contested patent lacks specificity that would suggest true inventiveness. The disclosure of Kingston, particularly at column 2, lines 59–61, as well as Dunning's disclosures of release coat solvents (see Tr. 77:15 to 78:1; 126:4–24) and Boyd's use of wax and rosin or other resins for heat release compositions are decisive viewing the facts of the record as a whole. Not only did plaintiffs fail to meet their burden of proof, but many of their arguments, as the Commissioner properly notes at page 24 of his Post Trial Brief, were irrelevant because they were not raised before the PTO.

Claims 1 to 17 are unpatentable under 35 U.S.C. § 103 over patents to Kingston, Dunning and Boyd. Plaintiffs are not entitled to an order authorizing the Commissioner to issue a patent covering any of these claims. The complaint is dismissed.

The Clerk of Court shall enter judgment for defendant.